UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 1:23-cr-10177-FDS-2 |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| BREON STROUP | ) |  |

**DEFENDANT'S REPLY TO THE
GOVERNMENT'S OPPOSITION TO HIS MOTION TO COMPEL DISCOVERY**

Breon Stroup, by and through undersigned counsel and with leave from this Court, replies as follows to the government's opposition (D.E. 94) to his motion to compel discovery (D.E. 78). Mr. Stroup maintains that requested discovery is relevant and material to the preparation of Mr. Stroup's defense, including a motion to suppress all fruits of the search warrant executed at his residence and for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Mr. Stroup specifically seeks to obtain discovery that roughly falls into two categories: 1) documents related to law enforcement's use of covert accounts to access, view and monitor Mr. Stroup's non-public social media accounts; and 2) information related to law enforcement's covert accounts themselves, including *inter alia* the name(s), depiction(s), and circumstances under which they began to access, target, monitor, and/or surveil Mr. Stroup's social media accounts.

This reply largely addresses the second category but spares a word to respond to the government's assertions regarding the first. Despite the government's original response to Mr. Stroup's discovery requests for reports, correspondence, notes, and other documents – that it "intends to turn over relevant reports and notes concerning the investigation as part of the government's obligation under 18 U.S.C. § 3500 three weeks prior to trial" [1] – the government

---

[1] *See* D.E. 78-5, Gov. Response to Discovery Request at 2, ¶¶ 12-13.

now asserts that no such material exists. Instead, the government claims that law enforcement merely "checked the defendant's social media accounts and, when they saw something significant to them, they took screenshots." D.E. 94, Gov. Opp. at 3. Assuming arguendo that no such material or documentation exists nor was created by law enforcement during their monitoring of Mr. Stroup's accounts, Mr. Stroup submits that surely Fall River Police would at the very least have the date(s) on which they took screenshots and copies of all such screenshots.[2] Such information would reveal whether the monitoring and capture of Mr. Stroup's social media activity was contemporaneous with the postings, or – as would be the case for the "memories" postings – they were monitored and captured some time later, affecting the probable cause and staleness analysis. For the reasons set forth in his motion to compel, he renews his request for production of that discovery. *See* D.E. 78, Def. Mot. at 3, 5, 10, 13.

I.  **Law Enforcement Used Fake Social Media Accounts to Obtain or Maintain Access to Non-Public Portions of Mr. Stroup's Social Media Accounts.**

In its opposition, the government makes several factual allegations which require attention and correction. First, they assert that Mr. Stroup was "on law enforcement's radar" and that "Fall River [police] were well aware of" him. D.E. 94, Gov. Opp. at 2. Their reasons for this assertion appear to relate to Mr. Stroup's prior criminal record for incidents and/or convictions dating back to 2015, 2018, and 2019,[3] and do not include any explanation for how law enforcement came to be aware of and/or follow Mr. Stroup's social media accounts. Fall River Police may have been aware of who Mr. Stroup was *as a person*, by virtue of prior arrests and/or convictions, but the government proffers no explanation or information as to how or when law enforcement came to

---

[2] For example, it is not clear from the government's response to Mr. Stroup's discovery requests whether the screenshots depicted in Det. Homen's Affidavit (*see* D.E. 78, Exh. A) contain *all* screenshots recorded by the Fall River Police Department in this case, or only those which Det. Homen chose to include in his Affidavit.
[3] These incidents referenced in the government's opposition differ from the government's discovery response to Request No. 1(b)(i), at D.E. 78-8, Exh. H at 4, which included two 2017 incidents and one 2019 incident.

2

become aware of his *online persona(s)* and how or when they came to identify and monitor his Snapchat and Instagram accounts. Moreover, according to Det. Homen's Affidavit, the first viewing and/or monitoring of Mr. Stroup's social media account appears to have been in June 2022 – three years after the last incident for which Mr. Stroup would have been "on law enforcement's radar." *Id.* at 2.

The government asserts, in a footnote, that they do not know how the covert accounts became associated with Mr. Stroup's social media accounts. *Id.* at 2, fn. 2. Whether that is the result of failing to inquire of FRPD or ATF or willful ignorance, it is not a reason to deny Mr. Stroup's discovery request as to the circumstances under which law enforcement were able to view Mr. Stroup's account(s) and/or postings, including whether law enforcement were "friends" and/or followers of Mr. Stroup's account(s) and/or whether an individual within Mr. Stroup's "friends" on Snapchat provided law enforcement with access and/or postings from Mr. Stroup's account.

Next, the government asserts that Mr. Stroup's social media usage made any maneuvering and/or trickery by the covert law enforcement accounts unnecessary because he had a large group of followers on social media, and that at least with respect to Instagram, his permission and/or approval was not required to "follow" his Instagram account. D.E. 94, Gov. Opp. at 4, 7. Neither assertion is inapposite, and neither requires denial of his motion to compel.

With respect to Mr. Stroup's Instagram account, even if anyone could "follow" his account, he did not maintain a purely public profile and effort was required to both search out his unique username and specifically follow his account to view postings, videos, and/or reels and to communicate with him.[4] Though he had a large follower count on Instagram at the time of the ATF

---

[4] The government obliquely references the possibility that "the aps themselves sometimes suggest connections, based on usage" (D.E. 94, Gov. Opp. at 2) – but does not indicate that that was the case here, and has given the court no information to support any inference that law enforcement's seeking out and monitoring of Mr. Stroup's social media accounts was anything other than purposeful and targeted. Indeed, the government

3

search warrant sought in late November 2022 – more than a month after his arrest and the execution of the search warrant for his person and residence in early October 2022 and two months after the last observed posting – that fact is unhelpful to the government where Instagram's privacy settings for individual accounts can be modified to significantly limit a follower's access. ATF Special Agent Briody, in his Affidavit, explains:

> Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

*See* 78-3, Exh. C, SA Briody's Instagram Affidavit at 10, ¶ 27. Given these myriad permutations of privacy settings and limitations on account access for even "followers" of a particular account, the fact that Mr. Stroup had a large following on Instagram does not address or answer the question of what law enforcement did to gain access to his postings, Reels, and/or Stories, and the government proffers no evidence that the postings containing contraband were broadcast or available to all of Mr. Stroup's Instagram followers.

For example, SA Briody's Affidavit notes that Mr. Stroup's Instagram account "shares publicly five photographs and three videos," none of which contained any depiction of contraband or unlawful activity. *Id.* at 4, ¶ 14. This is corroborated by the embedded screenshot of Mr. Stroup's public-facing Instagram profile in SA Briody's Affidavit. *Id*. This is distinct from Instagram "Reels," which are only visible to an account's followers, and are dependent on the account's broader privacy settings and limitations, as described above.[5] This distinction is critical where the

---

concedes as much by referencing Mr. Stroup as "on the radar" of law enforcement and as a "subject[] of interest." *Id.*

[5] *See* D.E. 78, Def. Mot. at 5; *see also*, Instagram, "Who can see and share your reels on Instagram," https://help.instagram.com/1392551434468488.

only contraband material referenced in both Det. Homen's and SA Briody's Affidavits were contained in an Instagram "Reel," versus the public postings.

The situation with respect to Snapchat – on which Mr. Stroup had a fraction of the numbers of followers he did on Instagram,[6] and for which privacy settings explicitly limit access to "Snaps" – is perhaps more straightforward and more important, considering that the bulk of the screenshots containing contraband and/or reference to illicit activity was obtained from law enforcement's access to and monitoring of Mr. Stroup's Snapchat. *See e.g.,* D.E. 78-A at 5-8. Like Instagram, however, Snapchat users who have a "public profile" must select whether a particular post or story is viewable by the public, the user's friends, or a smaller custom group.[7] But unlike Instagram here, the government does not claim that Mr. Stroup's Snapchat account was "public," and indeed appears to concede that law enforcement's access to his Snapchat account was the result of having been added to his "friends" or following on Snapchat.[8]

That law enforcement's covert accounts were one or two among many of Mr. Stroup's followers/friends, the deception and concealment of the covert accounts' true identities made it difficult or even impossible for Mr. Stroup to cull his follower list and/or block accounts, and therefore moderate access to his content. More importantly, the deception and concealment of the covert accounts' true identities made it impossible for Mr. Stroup to know that he was posting to a friend and/or follower group that consisted of people with whom he wished to share information,

---

[6] *See* D.E. 94, Gov. Opp. at 7.
[7] *See* Snapchat, "Where Did My 'Everyone' Privacy Setting Option for My Story Go," https://help.snapchat.com/hc/en-us/articles/14697065507092-Where-did-my-Everyone-privacy-setting-option-for-My-Story-go#:~:text=Your%20friends%20(Snapchatters%20you%20have,Story%20on%20your%20Public%20Profile, and "Snaps & Chats," https://values.snap.com/privacy/privacy-by-product#:~:text=Snaps%20and%20Chats%20are%20private,recommendations%2C%20or%20show%20you%20ads ("Snaps and Chats are private and delete by default[.]"). *See also* D.E. 78-2, Exh. B, SA Briody's Snapchat Affidavit at 8, ¶¶ 22-26 (describing the differing levels of access to material chosen by each user).
[8] *See* D.E. 78-5, Exh. H, Gov. Response to Discovery Request at 2, ¶ 13.

postings, videos, reels and/or stories. Indeed, Instagram records obtained by the government after the execution of the search warrant of Mr. Stroup's residence show that Instagram notifies users when an account has followed them and provides options to either follow back and/or block, and indeed did so in Mr. Stroup's case.

The government's attempt to distinguish cases cited by Mr. Stroup and, more specifically its reliance on *United States v. Devers*, 2012 WL 12540235 (N.D. Okla. Dec. 28, 2012), falls flat. *Devers* involved law enforcement disclosing that they looked at public facing pages to access the defendant's pictures, but here the government claims they do not know how the connection between Mr. Stroup's account and the covert law enforcement accounts was made. *See* D.E. 94, Gov. Opp. at 2, fn. 2. Even assuming that Mr. Stroup permitted law enforcement's fake account as one that could access his profile, he maintains that had law enforcement not disguised its identity, he would have avoided law enforcement's fake Snapchat account and he would not have permitted continued access to his Instagram account. Mr. Stroup's position, then, is contrary to the government's that Mr. Stroup 'voluntarily offer[ed] information with a 'misplaced belief' that it will not be shared." In an oral conversation with the government about law enforcement's covert accounts in this case, though they did concede neither were "celebrity" accounts, the government explicitly stated that these were accounts that *Mr. Stroup would want to be friends with*, thereby vitiating any claim as to the randomness and/or benign nature of these covert accounts.

Finally, the government's assurance that it sought a search warrant for Mr. Stroup's social media accounts[9] should give the court zero comfort where those search warrants were sought *after* law enforcement's covert access to Mr. Stroup's social media accounts, *after* the execution of the search warrant for Mr. Stroup's person and residence which was predicated on that covert access,

---

[9] *See* D.E. 94, Gov. Opp. at 8.

and *after* Mr. Stroup's arrest.

> **II. The Government has not Carried its Burden to Prove the Existence of its Asserted Privilege and Assuming Arguendo that a Qualified Privilege Exists, Mr. Stroup's Constitutional Rights Should Prevail.**

The government also asks the Court to deny Mr. Stroup's motion to compel because it says that information about law enforcement's fake and covert social media accounts is privileged. (D.E. 94 at 5.) The party asserting a privilege has the burden of showing that the privilege applies, and for the reasons explained below, neither privilege applies and the government has not satisfied its burden here. *See In re Grand Jury Proceedings (Gregory P. Violette)*, 183 F.3d 71, 73 (1st Cir. 1999).

The authority cited by the government does not support its position. The government first cites *Roviaro v. United States*, 535 U.S. 53 (1957). It does not explain why that case which involves a confidential informant should apply to a fake and covert social media account run by law enforcement. The Supreme Court explained in *Roviaro* that the reason to preserve a citizen informer's anonymity was to "encourage them to perform [their] obligation" to "communicate their knowledge of the commission of crimes to law-enforcement officials," *Roviaro*, 535 U.S. at 59. The same rationale does not apply here because there is no confidential citizen informant to keep anonymous so that citizens feel safe to communicate their knowledge of criminal activity. Instead, law enforcement used a covert social media presence that it controls. There is no anonymous confidential informant to protect so *Roviaro* does not apply. *See Commonwealth v. Dilworth*, No. 1884CR0469 at D.E. 54, Memorandum & Order on Deft's Motion for Discovery of Snapchat User Icon/Bitmoji and User Name (Suff. Sup. Ct. June 4, 2021) (rejecting both the informant privilege and the law enforcement privilege in discovery litigation where law enforcement surreptitiously monitored Snapchat accounts and where defendant sought to make a

pretrial equal protection claim). A copy of this decision is attached as Exhibit 1.

The government then cites *Gulluni v. United States Att'y for Dist. of Massachusetts*, 626 F. Supp. 3d 323, 330 (D. Mass. 2022) (Gorton, D.J.), and the First Circuit's decision in *Gulluni v. Levy*, 85 F.th 76 (1st Cir. 2023), which upheld Judge Gorton in *Gulluni I*. Those cases are also inapposite. Both Judge Gorton and the First Circuit recognized that Anthony D. Gulluni as the Hampden County District Attorney was not raising a first-person constitutional claim. He was instead raising the constitutional rights of others. *Gulluni I*, 626 F. Supp. 3d at 329 ("while the constitutional rights of defendants prosecuted by [Hampden County District Attorney] may be implicated pursuant to the disclosure requirements of *Brady*, 373 U.S. at 87, 83 S.Ct. 1194, those rights do not belong to the plaintiff presently before the Court."); *Gulluni II*, 85 F.4th at 80-81 ("The mere fact that disclosure would assist Gulluni in discharging his duties under *Brady* and *Giglio* does not make his request constitutional in nature."). Here, Mr. Stroup has not made a "*Touhy* request*,*" like Gulluni did, *Gullini II*, 85 F.4th at 80. He is raising his own, first-person, constitutional rights and that information should be disclosed under Fed. R. Crim. P. 16 and Local Rule 116.2(a)(1)-(3).

In the leading Massachusetts state court case dealing with discovery of covert law enforcement social media accounts in criminal cases, a Suffolk Superior Court judge rejected the application of both informant privilege and law enforcement privilege to Boston Police Department records relating to law enforcement's infiltration and monitoring of Snapchat accounts for a one-year period, and ordering the disclosure of the user icons or bitmojis, and the user names used by Boston Police on Snapchat. *See Dilworth*, No. 1884CR0469 at D.E. 54.[10] In rejecting the

---

[10] The Commonwealth's appeal of this order is pending before the Supreme Judicial Court, and was consolidated with the Commonwealth's appeal of the trial court's dismissal of the case as a sanction for the Commonwealth's refusal to produce the ordered discovery. Oral arguments were held on today's date. *See Commonwealth v. Dilworth*, No, SJC-13547.

Commonwealth's claims of privilege, the Superior Court noted that "although the disclosure may impede the police from using the disclosed fictional electronic identities as effectively, it will not prevent the police from inventing new ones to continue their collection of information on the Snapchat platform." *Id.* at 3. Characterizing the "police technique of secretly infiltrating Snapchat accounts" as an "infinitely renewable resource," the Superior Court ordered the largest police department in the Commonwealth of Massachusetts to produce discovery related to its use of covert accounts. *Id.* The same is true here. Notably, the Supreme Judicial Court, in reviewing an earlier-issued discovery order for Boston Police Snapchat records in the same case, upheld the denial of the Commonwealth's petition for interlocutory review, and, in so doing, left undisturbed the trial court's issuance of the discovery order for Boston Police snapchat records. *Commonwealth v. Dilworth*, 485 Mass. 1001 (2020).

Assuming arguendo that the government has established that privilege exists here, their privilege is not absolute. *United States v. Cintolo*, 818 F.2d 980, 1002 ("we are quick to stress that it is a qualified one"). A defendant can overcome qualified privilege by showing need and no adequate means of getting to the same point. *Id*. The determination of need requires a case-by-case balancing process. *Id.*

Mr. Stroup believes that when weighed here his constitutional rights justify the disclosure of the information he has sought. He maintains that his privacy settings were such that a reasonable expectation of privacy existed in his social media accounts and also that the government trespassed upon his effects by invading that protected space. (D.E. 78 at 14, citing *United States v. Chavez*, 423 F.Supp.3d 194 (W.D.N.C 2019); *United States v. Irving*, 347 F.Supp.3d 615 (D. Kan. 2018); *United States v. Bledsoe*, 630 F. Supp. 3d 1, 18 (D.D.C. 2022), and *United States v. Westley*, No. 3:17-cr-171-MPS, 2018 WL 3448161, at 6 (D. Conn. July 17, 2018). Law enforcement did so by

9

using fake social media accounts to surreptitiously surveil Mr. Stroup as he made statements and engaged in conduct that he would not have had he known that law enforcement was present. Finally, Mr. Stroup has no adequate means of learning about how law enforcement saw non-public information other than to ask the party that created and operated the fake accounts.

Finally, law enforcement's interest in maintaining these fake accounts need not result in denying Mr. Stroup's access to the information he seeks. As the Superior Court noted in *Dilworth*, law enforcement can tap the "infinitely renewable resource" of social media profiles and create new accounts. But the government need not resign itself to such a measure where Mr. Stroup is willing to abide by a protective order that only permits counsel to see whatever information the government has. Any filings that occur as a result of the protected discovery can then be filed under seal.

## CONCLUSION

For the reasons set forth herein and in his motion to compel, Mr. Stroup submits that this Honorable Court should order that the government provide the requested information to the defendant forthwith, or consistent with Local Rule 7.1(d), hold a hearing and permit oral argument on this motion.

Respectfully submitted,
BREON STROUP
By his Attorney,

*/s/Sandra Gant*
Sandra Gant
BBO # 680122
Federal Defender Office
51 Sleeper Street, Fifth Floor
Boston MA, 02210
Tel: (617) 223-8061

**CERTIFICATE OF SERVICE**

      I, Sandra Gant, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on May 6, 2024.

                                        */s/ Sandra Gant*
                                        Sandra Gant