*54*

# COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, ss.**

**SUPERIOR COURT**
**Criminal No. 18-453**
**Criminal No. 18-469** ✓

## COMMONWEALTH

### vs.

### RICHARD DILWORTH

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION FOR DISCOVERY OF
## SNAPCHAT USER ICON/BITMOJI AND USER NAME

Defendant Richard Dilworth seeks to pursue a motion challenging the Boston Police

Department's infiltration of Snapchat accounts to investigate young males of color, and, to this

end, has filed a series of discovery motions. Before me is his most recent motion, which seeks

discovery of "the user icons or bitmojis, and the user names" used by officers of the Boston

Police Department's Youth Violence Strike Force to infiltrate and monitor Snapchat accounts

during the one-year period from August 1, 2017 through July 31, 2018, including the accounts

used to monitor Mr. Dilworth.

In ruling on this discovery motion, I presume familiarity with Judge Ullmann's

Memorandum of Decision and Order on Defendant's Motions for Discovery on Alleged

Selective Prosecution, which allowed certain of defendant's discovery requests under Mass. R.

Crim. P. 17, see Commonwealth v. Dilworth, 35 Mass. L. Rptr. 365, 2019 WL 469356 (Jan. 18,

2019) ("the January 2019 Order",[1] and my Memorandum and Order on Defendant's Motion for

---

[1]     A Single Justice denied interlocutory review of Judge Ullmann's decision. The
Single Justice's denial was upheld by the full court. See Commonwealth v. Dilworth, 485 Mass.
1001 (2020) (rescript).

Equal Protection Discovery or for a Rule 17 Summons (Mar. 30, 2021) (Docket #45). As I did in my March 30, 2021 Order, I decline to revisit Judge Ullman's January 2019 Order, or to determine at this stage whether defendant may also raise an inference of impermissible discrimination under the equal protection framework established in Commonwealth v. Long, 485 Mass. 711 (2020). There is no question here that discovery of the user icons or bitmojis, and the user names, used by the police to infiltrate Snapchat accounts will persuasively and visually allow defendant to demonstrate or at least draw an inference about the ethnic and/or racial demographic the Boston Police chose to target for Snapchat monitoring.

In arguing against the requested discovery, the Commonwealth analogizes to the informant privilege and the surveillance location privilege. The Commonwealth contends that disclosure would end the police use of these investigative electronic tools and would impair the ability of the police to surreptitiously watch Snapchat accounts for suspicious activity.

Neither the informant privilege nor the surveillance location privilege are directly apt. The informant privilege is designed to protect sources of law enforcement information against threats of harm and to continue the flow of information to law enforcement. Commonwealth v. Barry, 481 Mass. 388, 410 (2019); Commonwealth v. Bonnett, 472 Mass. 827, 847 (2015). Similarly, the surveillance location privilege protects against the unnecessary disclosure of physical location information that will prevent the continued effective use of that physical location to conduct surveillance. Commonwealth v. Hernandez, 421 Mass. 272, 274-276 (1995); Commonwealth v. Lugo, 23 Mass. App. Ct. 494, 497-498 (1987), cited with approval in Commonwealth v. Lugo, 406 Mass. 565, 570 (1990).

The informant and surveillance location privileges are not directly applicable to electronic surveillance of the type apparently employed to watch Snapchat postings. First, the

argument against disclosing the user icon, bitmoji, or user name is "weakened" because

disclosure does not raise a concern with the physical safety of an informant or of police officers.

Hernandez, 421 Mass. at 276, quoting Commonwealth v. Rios, 412 Mass. 208, 213 n.7 (1992).

Second, although the disclosure may impede the police from using the disclosed fictional

electronic identities as effectively, it will not prevent the police from inventing new ones to

continue their collection of information from the Snapchat platform. In effect, the police

technique of secretly infiltrating Snapchat accounts is an infinitely renewable resource; spoiling

one electronic "surveillance location" – or a series of fictional identities used three to four years

ago – does not prevent the police from creating any number of others.

     More importantly, both the informant and surveillance location privileges will yield

when, as here, the information sought is relevant and material to the defense. See

Commonwealth v. Dias, 451 Mass. 463, 468-469 (2008) (informant privilege); Commonwealth

v. Grace, 43 Mass. App. Ct. 905, 906 (1997) (surveillance location privilege). In this case, the

defense believes, and has introduced considerable anecdotal information to support the

reasonableness of its belief, that the police targeted predominantly young men of color to

monitor their Snapchat accounts for illegal activity. Discovery of the monitoring police officer's

fictional Snapchat user identities is reasonably expected to offer relevant, material, and

persuasive graphic evidence of the racial and ethnic demographic targeted by the Boston police

for secret monitoring.

## **ORDER**

Defendant's Motion for Additional Discovery: Snapchat User Icon/Bitmoji and User

Name is **ALLOWED**.

Dated:  June 24, 2021

Peter B. Krupp
Justice of the Superior Court