UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No. 1:23-10177-FDS

UNITED STATES OF AMERICA

V.

BREON STROUP

<u>**MEMORANDUM AND ORDER ON MOTION TO COMPEL DISCOVERY**</u>

CABELL, Ch. U.S.M.J.

## I.  <u>Introduction</u>

Defendant Breon Stroup ("Stroup") is charged with being a felon in possession of two firearms ("the Ruger and Taurus firearms") in violation of 18 U.S.C. § 922(g)(1), as well as conspiring with defendant Traveyon Richardson ("Richardson") to purchase the firearms on Stroup's behalf in violation of 18 U.S.C. § 932(b).  As part of an investigation of Stroup for illegal firearms and narcotics, the Fall River Police Department ("FRPD") reviewed his Snapchat and Instagram accounts using an FRPD covert account, obtained a search warrant for his apartment, and recovered the Ruger and Taurus firearms during that search.  Thereafter, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") secured search warrants for information associated with Stroup's Snapchat and Instagram accounts partly

based on the use of covert accounts to review posts on Stroup's Snapchat and Instagram accounts.  (D. 78-2, ¶ 13) (D. 78-3, ¶ 14).

Presently pending is Stroup's motion to compel which, in large part, seeks information about when and how law enforcement accessed Stroup's Snapchat and Instagram accounts using covert accounts.  (D. 78).  For reasons set out below, the motion (D. 78) is allowed in part and denied in part.

## II.  **The Parties' Arguments**

Stroup argues that the requested information regarding the covert accounts[1] is discoverable because it:  (1) is material to preparing his defense under Fed. R. Crim. P. 16(a)(1)(E) ("Rule 16(a)(1)(E)"); (2) is exculpatory under *Brady v. Maryland*, 373 U.S. 83, 87 (1963); (3) is exculpatory information that might be subject to a motion to supress under Local Rule 116.2(a)(2) (D. 78, p. 11);[2] (4) constitutes Stroup's oral and written statements under Federal Rules of Criminal Procedure 16(a)(1)(A) ("Rule 16(a)(1)(A)") and 16(a)(1)(B) ("Rule 16(a)(1)(B)") (D. 78, p. 10);

---

[1] The record is somewhat unclear regarding the number of ATF covert account(s). The supporting affidavits for the ATF's Snapchat and Instagram search warrants identify two covert accounts.  (D. 78-2, ¶ 13) ("As part of this [ATF] investigation, law enforcement officers utilized an anonymous Snapchat account . . ."); (D. 78-3, ¶ 14) ("As part of this [ATF] investigation, law enforcement officers utilized an anonymous Instagram account . . ."). The government's February 2024 discovery letter, however, refers to one ATF account.  (D. 78-5) (February 2024 discovery letter by government referring to "the ATF account"). Regardless, the discrepancy is not material to resolving the motion to compel.

[2] In that regard, Stroup submits he needs the discovery to challenge the lack of probable cause to support the search warrants under *Franks v. Delaware*, 438 U.S. 154, 165 (1978).  (D. 78, pp. 1, 13, 15-16).

and (5) constitutes an unconstitutional invasion of his Fourth Amendment right to privacy in his non-public posts accessed by the covert accounts.[3]  (D. 78, 100).

The government responds in opposition with two primary arguments.  First, it counters that certain requested information does not exist.  For example, the dates and the length of time that law enforcement reviewed the posts on Stroup's social media accounts does not exist and is therefore not within the government's possession, custody, or control, according to the government.  (D. 94, pp. 3-5).  Second, other information, such as the names of the covert accounts and the dates of their creation, exists but, per the government's argument, is subject to the law enforcement privilege under *Roviaro v. United States*, 353 U.S. 53 (1957).

III.  **Legal Standard**

A.  **Rule 16(a)(1)(E)**

Rule 16(a)(1)(E) requires the government, upon request, to allow a defendant to inspect or copy "papers, documents, [and] tangible objects" provided "the item is within the government's possession, custody, or control" and "material to preparing the

---

[3] Stroup also sets out an "argument" which he does not develop, namely, that "the requested discovery would allow impeachment of the affiant" or aid Stroup's experts as well as the similar argument that the government's refusal to provide multiple categories of discovery prevents Stroup from assessing "witness credibility."  (D. 78, pp. 10-12.  The argument is waived.  *See United States v. Freitas*, 904 F.3d 11, 21 (1st Cir. 2018) (citation omitted).

defense" or "the government intends to use the material in its case-in-chief at trial."[4] Fed. R. Crim. P. 16(a)(1)(E). A showing of materiality under Rule 16(a)(1)(E) necessitates "'some indication' that pretrial disclosure of the information sought 'would have enabled the defendant significantly to alter the quantum of proof in his favor.'" *United States v. Goris*, 876 F.3d 40, 45 (1st Cir. 2017) (citation omitted). The defendant "bears the burden of showing materiality." *Id.* at 44 (citation omitted).

### B.   <u>Exculpatory Evidence Under *Brady*</u>

*Brady* requires the prosecutor "to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *United States v. Simon*, 12 F.4th 1, 51 (1st Cir. 2021) (citation omitted); *see also United States v. Cruz-Feliciano*, 786 F.3d 78, 87 (1st Cir. 2015) ("[e]vidence is favorable to the accused if it is either exculpatory or impeaching in nature"). *Brady* also applies only "to material that was known to the prosecution but unknown to the defense." *United States v. Bender*, 304 F.3d 161, 164 (1st Cir. 2002). "The government is primarily responsible for deciding what evidence it must disclose to the defendant under *Brady*." *United States v. Prochilo*, 629 F.3d 264, 268 (1st Cir. 2011) (citation omitted).

---

[4] Stroup argues that the Rule 16(a)(1)(E) documents are subject to production because they are material to the preparation of his defense rather than documents the government intends to use in its case-in-chief. (D. 78, pp. 10-11).

C.  **Discovery to Prepare Motion to Suppress for Franks Hearing**

"[A] defendant is entitled to a *Franks* hearing only if he first makes a substantial preliminary showing." *United States v. O'Neal*, 17 F.4th 236, 244 (1st Cir. 2021) (ellipses, quotation marks, and citation omitted).  The substantial preliminary showing requires the defendant to demonstrate:

> that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.  In addition, for the defendant to be entitled to relief, the allegedly false statement must be necessary to the finding of probable cause.

*United States v. Centeno-González*, 989 F.3d 36, 50 (1st Cir. 2021) (citations, brackets, and quotation marks omitted).  An omission of a material fact is also "sufficient to trigger a hearing." *United States v. Silva*, 742 F.3d 1, 8 (1st Cir. 2014) (citation omitted).  The substantial preliminary showing relative to an omission entails demonstrating that the omission "was made knowingly and intentionally or with reckless disregard for the truth." *Id*. (citations omitted).

IV.  **Relevant Background**

Several months before the FRPD's October 4 search, the FRPD began surveilling Stroup's apartment, which is in a multi-family dwelling.  (D. 78-1, p. 5).  The FRPD initially "came across [Stroup] on social media during other investigations into other individuals."  (D. 78, p. 8).  As part of its investigation of

5

Stroup for firearms and narcotics violations, the FRPD used the FRPD covert account to access and review his Snapchat and Instagram accounts. (D. 78-8, p. 3, ¶ 1(a)) (noting use of FRPD's account to view Stroup's social media accounts); (D. 78-1, pp. 5-9) (describing posts to Stroup's Snapchat and Instagram accounts).

In his October 4 supporting affidavit, FRPD Detective Gregory Homen ("Detective Homen") describes a June 4, 2022 post to Stroup's Snapchat account of a photograph of Stroup holding a firearm. At the top of the picture is text that reads, "Yesterday from Memories." (D. 78-1, p. 6). "'Memories' is Snapchat's cloud-storage service." (D. 78-2, ¶ 24). It allows users to "save their sent or unsent Snaps," which are "picture[s] or video message[s] taken and shared with other Snapchat users in real-time." (D. 78-2, ¶¶ 22, 24-25). A user can also add photos or videos to create a "Story" that, based on the user's privacy settings, can be viewed "by everyone on Snapchat or" only by "the user's friends." (D. 78-2, ¶ 23).

Detective Homen's affidavit references other photographs, as well as videos, posted to Stroup's Snapchat and Instagram accounts.[5] (D. 78-1, pp. 5-8). Of note, on October 3, 2022,

---

[5] Detective Homen further indicated in his supporting affidavit, and the government confirmed, that law enforcement also viewed Stroup's Facebook account. (D. 78-1, p. 6) (D. 78-8, p. 3).

Stroup posted a video to his Instagram account displaying the Ruger and Taurus firearms.  (D. 78-1, p. 8).

During the search of Stroup's apartment on October 4, the FRPD recovered the Ruger and Taurus firearms in a common basement area.  (D. 78-3, p. 3) (D. 78-2, p. 3).  The ATF Special Agent traced these two firearms to a September 28, 2022 purchase by Richardson in Maine.  On October 13, the ATF Special Agent interviewed Richardson, who explained that he had travelled to Fall River to visit Stroup and only realized that he had the firearms in his car when he arrived in Fall River.  Concerned about going back to Maine with the two firearms, he left them with Stroup.[6]  (D. 78-2, ¶ 12) (D. 78-3, ¶¶ 12-13).

In late November 2022, the ATF Special Agent submitted applications to this court for search warrants seeking information about Stroup's Instagram account from META Platforms, Inc. and Stroup's Snapchat account from Snap, Inc.  (D. 78-2, ¶ 5) (D. 78-3, ¶ 5).  As indicated, the supporting affidavits note the use of covert accounts to review Stroup's Snapchat and Instagram accounts.  (D. 78-2, ¶ 13) (D. 78-3, ¶ 14).  The supporting affidavit for the Instagram warrant includes the October 3 photograph in which Stroup is seen displaying the Ruger and Taurus

---

[6] Richardson has since pled guilty and agreed to a different version of the facts at a hearing pursuant to Federal Rule of Criminal Procedure 11.  (D. 101, pp. 16-17).

firearms.  (D. 78-3, ¶ 16).  Per the supporting affidavit, the photograph was observed on October 3.  (D. 78-3, ¶ 16).  The photograph itself is imbedded within a "story," which can only be viewed for twenty-four hours.  (D. 78-3, ¶ 16).

The supporting affidavit for the Instagram warrant additionally contains pictures of videos posted to the account, also known as reels.  One photograph of a reel shows Stroup with two bags of marijuana and, at a different point, a substantial amount of cash, all without a date, time, or indication when law enforcement viewed the reel.  (D. 78-3, ¶ 15).

Specific to the motion to compel, Stroup objects to the sufficiency of the government's responses to requests for production ("RFPs") 6, 12, 13, 1(a)(i), 1(a)(iii), and 1(b)(i). The court examines these requests, including subparts, seriatim.

## V. <u>Discussion</u>

### A. <u>RFP 6</u>

RFP 6 asks for the following:

6.    As to Fall River Police Detective Gregory Homen's search warrant affidavit, at STROUP 000641-49, identify and provide:

a.    The circumstances under which he and/or other law enforcement were able to view Mr. Stroup's Snapchat account and/or postings, including whether law enforcement were "friends" of Mr. Stroup's Snapchat account and/or whether an individual within Mr. Stroup's "friends" on Snapchat provided law enforcement with access and/or postings from Mr. Stroup's account;

> b.  With respect to the photographs and/or screenshots of
> Snapchat postings at STROUP 000643-46 and referenced at
> STROUP 000642-46, whether the dates were the dates of
> postings or the dates of capture (at least some of these
> purport to be from Snapchat "Memories"), as known to law
> enforcement at the time of both their "ongoing
> investigation" and the time of the search warrant[.]

(D. 78-4) (D. 78, p. 6).  Relative to these two subparts, the

government responds that:

> Law enforcement viewed Mr. Stroup's Snapchat account using
> covert accounts.  It is law enforcement's understanding
> that unless the picture/video designates on the top left
> corner that the picture/video is from another location,
> such as "Memories" or "Camera Roll," the picture/video
> posted was taken at or near the time of the capture.

(D. 78-5).  The government additionally informed Stroup's counsel

"that the covert law enforcement account was not a celebrity

account, and that it was an account 'with which Mr. Stroup would

want to be friends.'"  (D. 78, p. 8).

The government's response and the added description of the

covert account as an account with which Stroup would want to be

friends sufficiently responds to RFP 6(a).  In any event, the

undisclosed additional information (whether an individual within

Stroup's friends provided the access and/or the general

circumstances under which law enforcement viewed the posts) is not

material for Stroup to prepare a defense under Rule 16(a)(1)(E).

In particular, the undisclosed information would not engender some

indication of Stroup's ability to significantly change the quantum

of proof in his favor.  Rather, against the backdrop of the

government's disclosures to date, Stroup fails in his burden to make this showing.

The undisclosed information is also not material information within the meaning of *Brady*. There is little to indicate that the failure at this juncture to disclose the additional information will impact or foreclose a plausible strategic option. *See Cruz-Feliciano*, 786 F.3d at 87. Regardless, Stroup fails to state with "*some specificity* . . . why this evidence would be both favorable to him and also material." *United States v. Prochilo*, 628 F.3d 264, 271 (1st Cir. 2011) (emphasis added).

The discovery of the information to support a motion to suppress is also unavailing. Here, the undisclosed information "does not lend credence to [a] motion for a *Franks* hearing." *United States v. Moon*, Criminal Action No. 11-10223-DJC, 2012 WL 2178923, at *12 (D. Mass. June 13, 2012) (denying discovery for exact dates of controlled buys and information regarding affiant police detective's prior disciplinary action(s) to support motion for *Franks* hearing). The circumstances of Detective Homen's access would not significantly detract from the probable cause showing that Stroup's apartment would contain firearms. For instance, the affidavit includes the October 3 posting to Stroup's Instagram of

Stroup holding a firearm, with another firearm on his lap, as well as other pictures of Stroup holding firearms.[7]   (D. 78-1).

Likewise, the second sentence in the government's response sufficiently responds to RFP 6(b).   The request asks whether the dates were the posting dates or the capture dates.   The government responds that "the picture/video was taken at or near the time of the *capture*," unless it designates "another location, such as 'Memories' or 'Camera Roll.'"   (D. 78-5) (emphasis added).   Hence, the government stated, in essence, that the dates were the dates of capture absent the designation of another location.   Again, no additional information is required.   Moreover, the court credits the government's statement that it "does not have additional reports on when law enforcement captured the videos/photographs on Mr. Stroup's account."   (D. 78-8, p. 4).

Accordingly, the omitted information is not material under Rule 16(a)(1)(E) and/or *Brady*.   Similarly, the omitted information is not material within the meaning of Local Rule 116.2(a)(2).   RFPs 6(a) and 6(b) are therefore denied.

### B.   RFPs 12(a) and 13(a)

Next, RFPs 12(a) and 13(a) do not warrant additional production.   Targeting the ATF Special Agent's affidavits, these requests ask the government to "[i]ndicate when (including the

---

[7] The affidavit correspondingly states that Stroup does not have a license to carry a firearm.   (D. 78-1).

length of time, and specific dates) law enforcement reviewed
'images and videos posted by the *Snapchat* account breezybando.'"[8]
(D. 78, p. 6) (emphasis added).  The reference to Stroup's Snapchat
account in request 12(a) appears to be an oversight.  Treating
request 12(a) as referring to the Instagram account, the court
addresses the merits of the request.[9]

Importantly, the government represents that "the covert
account randomly accessed Stroup's social media profiles" and the
"specific times and durations at which the covert account
interacted with [Stroup's Snapchat and Instagram] accounts were
not recorded." (D. 94, p. 3).  Hence, as to RFPs 12(a) and 13(a)
for specific dates and length of time, the government represents
that "such documents do not exist." (D. 94, p. 3).  Crediting
these representations, *see Cook v. Lynn and Williams, Inc.*, 344
F.R.D. 149, 154-155 (D. Mass. 2023) (presuming attorney's
representations are "truthful absent any indication that they are

---

[8] Breezybando refers to Stroup's username.  The supporting affidavit for the
Instagram warrant spells the username as breezybando whereas the supporting
affidavit for the Snapchat warrant spells the username as breezybandzo.  (D.
78-2, ¶ 13) (D. 78-3, ¶ 14).

[9] To explain, request 12 prefaces RFP 12(a) as applicable to the supporting
affidavit for the Instagram warrant whereas RFP 12(a) refers to the Snapchat
account.  A similar oversight appears in RFP 13(b).  Request 13 prefaces RFP
13(b) as pertaining to the supporting affidavit for the Snapchat warrant.
Instead of referring to the Snapchat account, however, RFP 13(b) asks for
information relative to the Instagram account.  The court therefore construes
the "Instagram account" language as an oversight and addresses the merits of
RFP 13(b) as pertaining to the supporting affidavit for the Snapchat account.
The government's discovery letter response appropriately answers RFP 12(a)
relative to Stroup's Instagram account and RFP 13(a) relative to Stroup's
Snapchat account.  (D. 78-5).

untrustworthy"), "[t]he government cannot disclose what it does not have." *United States v. Amaya-Manzanares*, 377 F.3d 39, 43 (1st Cir. 2004) (citation and ellipses omitted).  In this regard, Rule 16(a)(1)(E) does "not apply to the document until it was created." *Id.*  The requested information is also not subject to production under *Brady* and its progeny. *See United States v. Hall*, 434 F.3d 42, 55 (1st Cir. 2006) ("The government's obligations under *Brady* only extend to information in its possession, custody, or control.") (citation omitted).

Similarly, the government cannot produce the material under Local Rule 116.2 because the information does not exist.  Hence, the unrecorded information of the specific times when law enforcement accessed the Instagram and Snapchat accounts cannot and "does not lend credence" to a motion for a *Franks* hearing. *See Moon*, 2012 WL 2178923, at *12 (denying discovery as giving rise to *Franks* motion because requested discovery "does not lend credence to Moon's motion for a *Franks* hearing and does not cast doubt on the admissibility of the evidence that such motion sought to suppress").  In sum, the government's responses to RFPs 12(a) and 13(a) are sufficient, and the motion to compel denied as to these RFPs.

C.   **RFPs 12(b)-(d) and 13(b)-(d)**

RFPs 12(b) through (d) ask for information about the ATF Special Agent's affidavits regarding:  (1) the use of a false name,

photograph, or profile for the Instagram covert account (RFP 12(b)); (2) "reports, correspondence, notes," and "other documents relative to law enforcement's investigation" and review of Stroup's Instagram account (RFP 12(c)); and (3) the identity of the law enforcement branch and the names of the participating law enforcement officer(s) (RFP 12(d)). RFPs 13(b) to 13(d) seek the same information for Stroup's Snapchat account. The government's responses to RFPs 12 and 13 are similar and provide as follows:

> 12. As it relates to this investigation, law enforcement reviewed Mr. Stroup's Instagram account for several months before and after the October 4, 2022, search warrant execution. Law enforcement used covert accounts; however, Mr. Stroup's Instagram account is open to the public. The review of the account was conducted by both [FRPD] and ATF. The government intends to turn over relevant reports and notes concerning the investigation as part of the government's obligation under 18 U.S.C. § 3500 three weeks prior to trial.

> 13. As it relates to this investigation, law enforcement reviewed Mr. Stroup's Snapchat account for several months before the October 4, 2022, search warrant execution. Law enforcement used covert accounts. The review of the account was conducted by FRPD. The government intends to turn over relevant reports and notes concerning the investigation as part of the government's obligation under 18 U.S.C. § 3500 three weeks prior to trial.

(D. 78-5).

Addressing the requests seriatim, Stroup does not articulate with specificity why the covert account's use of a false name, photograph, and/or no username is exculpatory under *Brady* or material information under Rule 16(a)(1)(E) or Local Rule 116.2(a)(2). Further, he bears the burden of proof of showing

materiality under Rule 16(a)(1)(E), and he fails to satisfy that burden.  *Goris*, 876 F.3d at 44.  By like token, the court is left to speculate about the evidentiary strength and exculpatory nature of this requested information under *Brady*.  *See United States v. Paladin*, 748 F.3d 438, 445 (1st Cir. 2014) (examining materiality of undisclosed evidence under *Brady* and stating "because Paladin chose to leave the record before the district court undeveloped, this panel is left to speculate . . .").  The materiality of the requested information under Local Rule 116.2(a)(2) is also left to speculation.

In any event, the requested information is not exculpatory or material.  This is because "deception is a well-established and acceptable tool of law enforcement."  *Pagán-González v. Moreno*, 919 F.3d 582, 591 (1st Cir. 2019).  For example, an acceptable tactic is the familiar scenario of an undercover agent posing as a drug dealer to gain entry into the target's home.  *Id.* at 592; *see id.* ("Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it."  (citing *Hoffa v. United States* 385 U.S. 293, 302 (1966))).[10]

---

[10] Conversely, a police officer cannot identify himself as a police officer and then gain entry into a residence through "consent" by misrepresenting the purpose for the entry.  *Id.* (citing *United States v. Bosse*, 898 F.2d 113, 115 (9th Cir. 1990) (per curiam)).

Here, law enforcement used a covert account, perhaps posing as a friend or using a false name, in the context of more than 14,000 followers on Stroup's Instagram account and more than 2,700 friends on Stroup's Snapchat account.  (D. 94, p. 7).  Against that backdrop, Stroup accepted the risk that a recipient friend or follower would share or take a screenshot of Stroup's posts.  (D. 78-2, ¶¶ 22, 25, 30);[11] (D. 78-3, ¶¶ 29, 30, 33);[12] *see Pagán-González*, 919 F.3d at 592 (deception acceptable under Fourth Amendment because target "freely made the choice to expose his criminal activity to others," in other words, "he has voluntarily

---

[11] Regarding the ability of a recipient of a Snap to save the communication, the ATF Special Agent explained:

> Despite the fact that a certain "Snap" is intended by the sender to be deleted after viewing, the *receiver has the ability to save the "Snap" video or picture using the mobile device's screenshot and/or screen recording functions*.  Those files may be saved to the device itself and/or transferred through various methods to another computer or electronic device.

(D. 78-2, ¶ 30) (emphasis added).

[12] The ATF Special Agent described the features of Instagram and referred to a recipient taking a screenshot:

> Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location.  These appear as posts on the user's profile.  Users can remove posts from their profiles by deleting or archiving them . . . An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings . . . Senders . . . have access to each message's status, which indicates whether it was delivered, opened, or replayed, and *if the recipient took a screenshot*.

(D. 78-3, ¶¶ 29, 30, 33) (emphasis added).

assumed the risk of inviting individuals whom he knows he cannot control into his residence.").

In accordance with the above discussion, discovery of the use of a false name, photo, profile (or the absence of a username or photograph) sought in RFPs 12(b) and 13(b) is not material to prepare a defense under Rule 16(a)(1)(E), not material information under *Brady*, and not material within the meaning of Local Rule 116.2(a)(2) relative to a *Franks* motion.  Hence, the information Stroup seeks in RFPs 12(b) and 13(b) is not subject to production at this time.

With respect to RFPs 12(c) and 13(c), the government "intends to turn over relevant reports and notes concerning the investigation as part of the government's obligation under 18 U.S.C. § 3500 three weeks prior to trial."  (D. 78-5, ¶¶ 12- 13). Stroup seeks production sooner as exculpatory information under *Brady*.  (D. 78, p. 11).  In addition, he maintains the items are discoverable under Rule 16(a)(1)(E) because they are material to the preparation of his defense.  (D. 78, pp. 10-11).

Production under Rule 16(a)(1)(E) as to internal government reports is foreclosed.  Rule 16(a)(2) "does not authorize the discovery or inspections of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."  Fed. R. Crim. P. 16(a)(2).  The 2013

amendments to Rule 16(a) "make[] it clear that a defendant's pretrial access to . . . documents under Rule 16(a)(1)(E) remains subject to the limitations" in Rule 16(a)(2).  Fed. R. Civ. P. 16(a) advisory committee's note to 2013 amendment.  In accordance with the government's stated intention, production of other, non-internal relevant reports and notes concerning the investigation will be produced three weeks before trial.  Whereas it appears the government might use these documents in its case-in-chief, Rule 16(a)(1)(E) does not set a specific deadline for inspection and, accordingly, does not require inspection more than three weeks prior to the trial.  Hence, with respect to relevant reports and notes, the government is in compliance with Rule 16(a)(1)(E).

As to production under *Brady*, the government's responses (D. 78-5, 78-8) imply that the government does not have exculpatory material within the meaning of *Brady*.  In any event, it goes without saying that *Brady* imposes an ongoing obligation on the government to disclose *Brady* material.

Relative to a *Franks* motion, production of the reports and investigative notes under Local Rule 116.2(a)(2) is denied at this time.  Notwithstanding Stroup's assertion that it is impossible to assess the truthfulness of the statements in the supporting affidavits related to the scope and nature of the investigation (D. 78, p. 12), disclosure of the government's "documents relative to law enforcement's investigation" in RFPs 12(c) and 13(c) is not

warranted.  "*Franks* does not itself suggest that the Government has a discovery or disclosure duty."  *United States v. Moon*, Criminal Action No. 11-10223-DJC, 2011 WL 6935340, at *2 (D. Mass. Dec. 30, 2011).  Moreover, Stroup does not convincingly explain why the reports, correspondence, and notes will indicate false statements or material omissions in the supporting affidavits as a gateway for a *Franks* hearing or support for a *Franks* motion. The requests therefore amount to speculation.  *See United States v. Monell*, Crim. No. 12-10187-FDS, 2013 WL 12437912, at *5 (D. Mass. Feb. 12, 2013) (denying discovery of police department's manual or policies concerning creation of reports, retention of notes, and search warrant applications because "[d]efendant merely speculates that the affiant may have violated" policy related to investigative activity).

Turning to production under Rule 16(a)(1)(B), Stroup posits that "[l]aw enforcement's notes and reports documenting their observations and their use of user accounts would be expected to contain written, and/or recorded statements of Mr. Stroup."  (D. 78, p. 10) (citing Rule 16(a)(1)(B)).  If requested by a defendant, Rule 16(a)(1)(B) requires the government to disclose "relevant written or recorded statements by the defendant . . . within the government's possession, custody, or control . . ."[13]  Fed. R.

---

[13] The court does not agree with Stroup's additional contention that "[t]he requested items – depending on whether Mr. Stroup knew his postings were viewable and/or accessed by law enforcement – would also be discoverable under

Crim. P. 16(a)(1)(B).  The government is therefore instructed to review the notes and reports and, unless the government previously produced the statements, disclose the statements to Stroup.  Except for this review and a further production, if warranted, RFPs 12(c) and 13(c) are denied.

Proceeding to RFPs 12(d) and 13(d), Stroup seeks to identify the law enforcement branch and the officers' names who participated in the investigation.  The government's response states that the FRPD and the ATF reviewed the Instagram account and that the FRPD reviewed the Snapchat account.  (D. 78-5).  Accordingly, the government adequately identified the law enforcement branch for both RFPs.  No more is required.

Regarding the names of the participating officers, Stroup fails in his burden to show that these names constitute exculpatory material under *Brady*.  Discovery of the names under Rule 16(a)(1)(E) is also denied.  To the extent one or more of the participating officers will be witnesses the government plans to call in its case-in-chief, "[t]here is no requirement under Fed. R. Crim. P. 16 or otherwise in the law[] mandating the disclosure to the defense of the identity of the government's trial

---

Fed. R. Crim. P. 16(a)(1)(A)."  (D. 78, p. 10).  By its terms, Rule 16(a)(1)(A) requires that the defendant's oral statement be made "in response to interrogation . . ."  Fed. R. Crim. P. 16(a)(1)(A); *see generally United States v. Rodríguez-Torres*, 939 F.3d 16, 33 (1st Cir. 2019).  In presenting the argument, Stroup fails to identify an interrogation to which he was subjected.

witnesses." *United States v. Reis*, 788 F.2d 54, 58 (1st Cir. 1986) (citation omitted).  Likewise, to the extent the government does not intend to call one or more of the participating officers as a government witness, the names are not subject to disclosure under Rule 16(a)(1)(E).  *See United States v. Cousin*, Criminal No. 20-10071-ADB, 2022 WL 314853, at *21 (D. Mass. Feb. 2, 2022) (denying request to disclose identities of police officers government does not intend to call as witnesses) (citation omitted).[14]

As a final matter pertaining generally to RFPs 12 and 13, Stroup argues that he has a Fourth Amendment right to privacy in his social media posts.[15]  He asserts that law enforcement's investigation and use of covert accounts to access his non-public posts constitute an unconstitutional intrusion on his privacy. Discovery of information related to the depiction of the covert accounts, when they were created, and the circumstances of how law enforcement monitored Stroup's social media accounts will, according to Stroup, allow him to assess the scope of the intrusion into his non-public posts.  (D. 78, pp. 10, 12-15) (D. 100).  The argument does not justify additional discovery and production of information under RFPs 12 and 13.

---

[14] Absent evidence to the contrary, the court assumes that the government complied with Local Rule 116.2(b)(1)(C) to (E).

[15] Stroup does not tether the privacy argument to a specific discovery request.

First, to the extent Stroup has a Fourth Amendment right to privacy in the non-public information on his Instagram and Snapchat accounts, the government obtained search warrants supported by probable cause. *See United States v. Bledsoe*, 630 F. Supp. 3d 1, 18 (D.D.C. 2022) ("Obtaining a warrant was a prudent approach given the weight of persuasive authority holding that non-public content held on social media accounts is protected under the Fourth Amendment.").[16]

Second, Stroup's disclosure of the information to more than 14,000 of his Instagram followers and more than 2,700 of his Snapchat friends ended any legitimate expectation of privacy because those recipients could use and share that information with others via screenshots.[17] *See United States v. Devers*, No. 12-CR-50-JHP, 2012 WL 12540235, at *2 (N.D. Okla. Dec. 28, 2012) ("[L]egitimate expectation of privacy ended when [defendants] disseminated posts to their 'friends' because those 'friends' were free to use the information however they wanted."); *accord United States v. Dixson*, No. 19-20305, 2021 WL 4260673, at *2 (E.D. Mich. Sept. 20, 2021) ("[E]ven assuming that [defendant] had some reasonable expectation of privacy in his private Instagram

---

[16] Stroup argues that the government obtained the search warrant "*after* law enforcement's covert access . . ." (D. 100, p. 6) (emphasis in original). Even so, and as discussed in the next paragraph, he does not have a reasonable expectation of privacy. Accordingly, Stroup's argument lacks merit.

[17] *See supra* notes 11 and 12 and related text.

account—[his] approval of" follower request "amounted to consent to the search of his Instagram account."); *see also United States v. Gatson*, No. 13-705, 2014 WL 7182275, at *22 (D.N.J. Dec. 16, 2014) (stating law enforcement officers' use of "undercover account to become Instagram 'friends' with [defendant]," who accepted request(s), was consensual thereby allowing officers to view photos and "information [defendant] posted to his Instagram account" without search warrant); *United States v. Meregildo*, 883 F. Supp. 2d 523, 525-26 (S.D.N.Y. 2012); *accord United States v. Cooper*, Case No. 4:21-CR-190, 2023 WL 3936724, at *2 (E.D. Mo. May 2, 2023) (stating "[m]any district courts across the nation have held that law enforcement may use an undercover account to become 'friends' with a suspect on a social media platform."), *report and recommendation adopted*, 2023 WL 3933684 (E.D. Mo. June 9, 2023).[18]

---

[18] Stroup distinguishes *Devers* on the basis that the circumstances involved "public facing pages." (D. 100, p. 6). Even though *Devers* involved law enforcement viewing Facebook accounts "which had no secure privacy settings," *Devers*, 2012 WL 12540235, at *2, the other cases, most notably *Dixson*, 2021 WL 4260673, at *1; *Gatson*, 2014 WL 7182275, at *22; and *Meregildo*, 883 F. Supp. 2d at 525-26, confined the postings to "friends." As aptly stated in *Dixson*:

> A user who has a private account must accept another user's "follow" request for the second user to see all of the content on the first user's private account. Even when an Instagram user has a private account, followers of that account can still share information posted on the account. *See id.* at 17-18. For instance, *the user's followers could take a screenshot* of a picture that the user posts on his private Instagram account, *and the followers could then share the screenshot of the picture by sending it via text message, posting it on any number of social media platforms,* or even by printing the screenshot and showing the hard copy of it to other people.

*Dixson*, 2021 WL 4260673, at *1 (emphasis added).

In sum, RFPs 12(b) to 12(d) and 13(b) to 13(d) are denied except with respect to requests 12(c) and 13(c). As to RFPs 12(c) and 13(c), the government shall undertake the described review for Stroup's written or recorded statements within the meaning of Rule 16(a)(1)(B) and, if not previously produced, disclose the statements.

### D.  RFPs 1(a)(i) and 1(a)(iii)

RFP 1(a)(i) seeks:

> All information and data that law enforcement has regarding its covert account(s) utilized in this case, and any and all information and data that law enforcement collected about Mr. Stroup's social media accounts using the covert account(s) or any other account or method, including but not limited to[,] . . . [w]ith respect to the covert account(s)[,] [t]he name and depiction of the covert account(s) as it appeared [from] May–October 2022.

(D. 78, p. 7). RFP 1(a)(iii) asks "[w]hen the account was created." (D. 78, p. 7). The government declined to provide the information because "both [the] ATF and FRPD's accounts that were used to view Mr. Stroup's accounts are in active use in other investigations." (D. 78-8). Further, because they are in active use, the information regarding the identity and nature of the covert accounts is protected under the law enforcement privilege, per the government's argument. The government is correct.

The qualified privilege for law enforcement materials evolved from *Roviaro*, 353 U.S. at 77. *See Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 62 (1st Cir. 2007) (explaining "Supreme

Court first recognized a qualified privilege for certain information related to law enforcement activities in *Roviaro*," 353 U.S. at 77).  Taking issue with the government's citation to *Roviaro* (D. 94, p. 5), Stroup argues that "[t]here is no anonymous confidential informant to protect so *Roviaro* does not apply."  (D. 100, p. 7).  To be sure, *Roviaro* created a qualified privilege to protect the identity of a confidential informant and there is no confidential informant in this case.  Stroup's argument otherwise fails to persuade.  Notably, after *Roviaro*, the First Circuit "recognized a privilege for law enforcement materials in other circumstances."  *Commonwealth of Puerto Rico*, 490 F.3d at 62. Pertinent here, the privilege extends "to 'law enforcement techniques and procedures.'"  *Id.* at 64 (citation omitted); *accord Gulluni v. U.S. Att'y for Dist. of Mass.*, 85 F.4th 76, 85 (1st Cir. 2023) ("[W]e have recognized a privilege for law enforcement activities regarding . . . 'law enforcement techniques and procedures.'") (citing *Commonwealth of Puerto Rico*, 490 F.3d at 64) (additional citations omitted).

The privilege is qualified as opposed to absolute.  *See Commonwealth of Puerto Rico*, 490 F.3d at 64.  It is therefore "subject to balancing the federal government's interest in preserving the confidentiality of sensitive law enforcement techniques against the requesting party's interest in disclosure." *Id*.  To that end, a "sufficient showing of authentic necessity"

may, depending on the specific circumstances of the case, overcome the privilege. *Gulluni*, 85 F.4th at 85 (citations omitted).

The balance favors the government and precludes the disclosure of the information sought in RFPs 1(a)(i) and 1(a)(iii). To begin, "[d]isclosure of confidential government surveillance information . . . will enable criminals to frustrate future government surveillance and perhaps unduly jeopardize the security *of ongoing investigations*." *United States v. Cintolo*, 818 F.2d 980, 1002 (1st Cir. 1987) (emphasis added). Crucially, the government represents, and the court credits, that the FRPD covert account remains in use in other investigations. (D. 94, p. 4). The same is true with respect to the covert accounts used by the ATF to monitor Stroup's Instagram and Snapchat accounts. (D. 78-8, p. 3). More, the disclosure of the requested information will likely identify key features of these active covert accounts, including the name and depiction of the covert accounts as they appeared on Stroup's social media accounts from May to October 2022.

Stroup attempts to counter this strong government interest by asserting a constitutional right to privacy. He maintains that the "friends" setting created a reasonable expectation of privacy in his social media accounts. (D. 100, p. 9). For reasons discussed in the final paragraph of subsection V(c), Stroup does not have a reasonable expectation of privacy. Even if he did, the

interest is not strong given the ability of recipients to take screenshots and thereby disclose the posts to non-recipients. Thus, the weakness of this interest is outweighed by the government's strong interest in avoiding the disclosure of identifying information about the covert accounts and jeopardizing currently active investigations.

Stroup also expresses a willingness to abide by a protective order allowing only counsel to view the material.[19] Undeniably, disclosing the information only to counsel under a protective order reduces the risk of disclosing identifying features of the covert accounts. Nevertheless, a protective order is not failsafe. Inadvertent disclosures may occur. In any event, the benefit of disclosing the information only to counsel fails to outweigh the weighty and forceful government interest in avoiding jeopardizing ongoing investigations using these active covert accounts. Specific to the FRPD account, disclosure compromises the trust between local police departments, such as the FRPD, and federal law enforcement agencies, such as the ATF. *See Gulluni v. Levy*, 85 F.4th 76, 86 (1st Cir. 2023) (stating "disclosure might decrease the willingness of local police departments to share records with DOJ in the future") (quoting *Gulluni*, 626 F. Supp. 3d at 330-31).

---

[19] The protective order in this case does not include a category limiting disclosure of highly confidential material to counsel. (D. 54).

In all, the discovery sought in RFPs 1(a)(i) and 1(a)(iii) is denied.

**E.   RFP 1(b)(i)**

RFP 1(b)(i) asks for "[r]eports, notes, and other data collection of law enforcement's monitoring and surveillance of" Stroup's social media accounts, including "when and the circumstances under which the viewing of [the social media accounts] began (including how law enforcement became aware of Mr. Stroup's social media accounts and why he initially became a target of monitoring and/or surveillance)." (D. 78-7).  The government's response identifies three reports and states that they "detail how the FRPD became aware of Mr. Stroup." (D. 78-8).  The reports describe two motor vehicle stops in 2017 and another one in 2019. (D. 78-8).  During two of the stops, FRPD officers found various amounts of marijuana.  (D. 78-8).  Stroup maintains that these three reports do not relate to his social media accounts.  (D. 78, p. 9).

After responding to the request, the government informed Stroup "that FRPD 'came across [Stroup] on social media during other investigations into other individuals.'" (D. 78, p. 8). This additional, more responsive information sufficiently addresses the portion of the request that asks "how law enforcement became aware of . . . Stroup's social media accounts." (D. 78-7).

The remaining requested information consists of the date when law enforcement began viewing Stroup's social media accounts and why Stroup became a target for monitoring his social media accounts.  Regarding the date when law enforcement began viewing the accounts, the government represents the information does not exist.  (D. 94, p. 3) (explaining that "[i]nformation and documents describing when . . . law enforcement viewed [Stroup's] social media accounts" falls under category of documents that do not exist).  Thus, for reasons more fully espoused regarding RFPs 12(a) and 13(a), "[t]he government cannot disclose what it does not have."  *Amaya-Manzanares*, 377 F.3d at 43 (citation and ellipses omitted).

Discovery of why Stroup became a target for monitoring his social media accounts is not material information under *Brady*.  With respect to production under Rule 16(a), Stroup is seeking reports and notes of law enforcement in monitoring and surveilling his social media accounts.  The government agrees to turn over relevant reports and notes concerning the investigation three weeks prior to the trial.  Rule 16(a) does not require additional production.

Stroup also fails to articulate why the reports or notes will uncover false statements or material omissions in the supporting affidavits to support a substantial preliminary showing to obtain a hearing under *Franks*.  Rather, here again, the request amounts

to speculation.  *See Monell*, 2013 WL 12437912, at *5.  The motion to compel is therefore denied as to RFP 1(b)(i).

## VI.   <u>CONCLUSION</u>

In accordance with the foregoing discussion, the motion to compel (D. 78) is **<u>ALLOWED</u>** with respect to RFPs 12(c) and 13(c) only to the extent that the government shall review the notes and reports and, if not previously produced, disclose the written and/or recorded statements of Stroup within the meaning of Rule 16(a)(1)(B).  The motion (D. 78) is otherwise **<u>DENIED</u>**.

<u>/s/ Donald L. Cabell</u>
DONALD L. CABELL, Ch. U.S.M.J.

DATED:  July 26, 2024